Lloyd U. Noland, Jr., and Jane K. Noland v. Commissioner. *
Noland v. Commissioner
Docket Nos. 63259, 63682.
United States Tax Court
T.C. Memo 1958-60; 1958 Tax Ct. Memo LEXIS 170; 17 T.C.M. (CCH) 301; T.C.M. (RIA) 58060; April 14, 1958
*170 The petitioner, an officer of several corporations, claimed certain expenditures as his own ordinary and necessary business expenses. Held, under the facts presented, petitioner has failed to prove that the expenditures were made pursuant to a plan of the corporations involved requiring or expecting him to absorb certain expenses of his several offices. Held, further, except for certain concessions by the respondent, petitioner has not shown any of the expenses involved were ordinary and necessary expenses of his trade or business. H. Brice Graves, Esq., and T. Justin Moore, Jr., Esq., for the petitioners. Charles R. Hembree, Esq., and George H. Becker, Esq., for the respondent. MULRONEY Memorandum Findings of Fact and *171 Opinion MULRONEY, Judge: The respondent determined deficiencies in income tax of petitioners for the years 1952 and 1953 in the amounts of $4,634.84 and $7,503.94, respectively. The only issue before us is whether or not certain expenditures made in 1952 and 1953 are deductible by the petitioners in those years under section 23(a)(1)(A) of the Internal Revenue Code of 1939. Some concessions have been made by both parties which will be taken into account under a Rule 50 computation. Findings of Fact Lloyd U. Noland, Jr. and Jane K. Noland are husband and wife and reside in Warwick, Virginia. They filed joint Federal income tax returns for the taxable years 1952 and 1953 with the district director of internal revenue for the district of Virginia. Lloyd U. Noland, Jr., hereinafter referred to as the petitioner, was, during the taxable years before us, the president and a director of the Noland Company, Inc., chairman of the board of directors of Virginia Engineering Company, Inc., a director of Tidewater Construction Corporation, chairman of the board of directors of Richmond Hotels, president of the Biggs Antique Company, and president and director of the Antietam Hotel Corporation. *172 The Noland family owns a controlling interest in the stock of the Noland Company, Inc., hereinafter referred to as the Company. The Company has had for some time a policy of paying bonuses to its employees based on company profits. The amount of bonus to be paid to each employee, including so-called key personnel, was determined by a committee set up by the directors. During 1952 the petitioner received from the Company a salary of $12,230 and a bonus of $30,000. During 1953 he received from the same source a salary of $25,480 and a bonus of $15,000. Petitioner's salary is fixed by the board of directors. During 1952 and 1953 the petitioner claimed as deductions certain expenditures which were labeled as follows: 1952
A. Dues and Subscriptions
Propeller Club
$ 15.00
The Hampton Roads Tide-
water Field Trial Club
3.00
Deep Run Hunt Association
10.00
James River Hunt, Inc.
15.00
Virginia Association Chiefs
of Police
25.00
Baltimore Country Club
23.10
$ 91.10
B. Non-reimbursable busi-
ness expenses
Evelyn H. Coleman, Florist
$ 36.25
Diner's Club
5.00
Hotel Richmond
54.37
Henri Fayette
13.50
S. D. Huxley
2.00
Hotel Chamberlin
3,795.55
Hotel Chamberlin
169.11
Camalier & Buckley
16.50
James River Country Club
11.70
Flax-Employees' Christmas
party
150.00
Biggs Antique Co., Inc.
413.46
Horseman Florist
25.63
Office Petty Cash
65.00
The Hammond Company
97.50
Young Men's Shop
67.35
F. W. Woolworth (Favors
for Employees' Party)
19.95
$4,942.87
Total expenses for 1952 remain-
ing in issue
$5,033.97
1953
A. Dues and Subscriptions
Baltimore Country Club
$ 15.00
The Diner's Club
5.00
James River Country Club
57.49
The Deep Run Hunt Associa-
tion
10.00
"Personal from Pearson"
50.00
Virginia Gold Cup Commit-
tee
15.00
The Propeller Club of Port
of Newport News
7.50
The Press, Inc.
2.40
Virginia Association Chiefs
of Police
25.00
The James River Hunt, Inc.
15.00
Peninsula Industrial Com-
mittee
1,500.00
Time
7.87
$1,710.26
B. Non-reimbursable busi-
ness expenses
Evelyn H. Coleman, Florist
$ 96.00
The Hammond Company
111.00
Hotel Chamberlin
3,658.50
Hotel Chamberlin
675.24
Biggs Antique Company,
Inc.
238.41
Horseman Florist
95.24
Hotel John Marshall
19.25
Office Petty Cash
10.00
Total of varied detailed ex-
penses incurred on behalf
of the Companies with
which I am associated in
the solicitation of business,
entertainment of customers
and associates, and build-
ing goodwill - which ex-
penses have not other-
wise been reimbursed or
claimed as deduction
1,383.08
$6,286.72
Total expenses for 1953 remain-
ing in issue
$7,996.98
*173 The Company had for many years prior to 1952 sponsored a Christmas party for the general personnel of the Company. During the years before us the petitioner took it upon himself to sponsor a more elaborate party at the Hotel Chamberlin for such personnel and their families. The petitioner allocated a substantial portion of the dues and subscriptions and alleged nonreimbursable business expenses which he incurred during the years before us between himself personally and the several companies with which he was associated. Many of the expenditures which were alleged to have been incurred for business motives were incurred by him not only on behalf of the Company but also on behalf of the several other corporations with which he was associated. The petitioner has not shown that any of the expenditures involved herein qualify as individual ordinary and necessary business expenses. Opinion The sole issue for our determination is whether certain expenditures made and claimed as deductions by the petitioner in the years before us qualify as ordinary and necessary business expenses in those years. There is no question concerning the fact that the amounts were paid as this was orally *174 stipulated. Only the deductibility is in issue. Section 23(a)(1)(A), Internal Revenue Code of 1939, [1] provides in part that there shall be allowed as a deduction "All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *." Petitioner has the burden of establishing that the expenditures were ordinary and necessary, and, as provided in Regulations 111, section 29.23(a)-1, that they were "directly connected with or pertaining to the taxpayer's trade or business." Petitioner originally appears to have claimed certain of the expenditures (set out fully in our findings of fact) under one theory and others under another. The petitioner indicates that those expenditures labeled "Expenses paid for business purposes non-reimbursed" are claimed under section 23(a)(1)(A). Another group of expenditures labeled "Dues and Subscriptions" are claimed under either section 23(o) or section 23(a)(2). Thus we see that the petitioner did not originally label, or contend, that all of the expenses in question were business expenses. The opening *175 statement of petitioner's counsel indicates that the theories under which the deductions are claimed are "as business expenses or otherwise." In petitioner's brief all of the expenditures are claimed to qualify as business expenses. It is generally contended that all of the expenditures were made by petitioner as ordinary and necessary expenses of his trade or business of being a corporate executive. Some of the expenditures, it is contended, were made for the benefit of the Company, but were made pursuant to a policy of the Company requiring or expecting its key employees to bear certain entertainment expenses of their offices. It does not seem to be argued that all of the expenditures came within this policy. The argument with respect to some of the expenditures was that they were ordinary and necessary business expenses because they were his own expenses in connection with his business of being a corporate executive. The respondent contends that none of the expenditures qualify as petitioner's deductions, but that if any of such expenditures were ordinary and necessary business expenses, they were such expenses of the corporations and not the petitioner. We agree with the respondent. *176 We must start with the proposition that a corporation and its officers or stockholders are different entities. Consequently, the business of the corporation cannot be considered to be the business of its stockholders or officers. Burnet v. Clark, 287 U.S. 410. It is also well settled that the statute does not permit the deduction by one taxpayer of the expenses of a separate and distinct taxpayer. Deputy v. DuPont, 308 U.S. 488. Petitioner argues that certain of the expenditures in question were made pursuant to a policy of the Company requiring or expecting him to bear such expenses. The argument is that because of such policy these expenditures are shown to proximately result from, or are necessary to, his own "trade or business," that is, of being an officer of the corporation for whose benefit the expenditures were made. All of the petitioner's evidence with respect to such policy that key employees should bear part of customers' entertaining expense and the relation of such expense to the realization of the corporate officers' own income is wholly unsatisfactory. The evidence of the existence of the policy is no more than the bare statement of *177 the petitioner and one director that such a "policy" existed. This was for the most part in answer to leading questions as to whether they were aware of such a policy. No attempt was made to show there was such a policy by any documentary evidence and the evidence was not expanded at all beyond the bare self-serving statement of the petitioner and the vague statement of the other director. It affirmatively appears that the employees were not expected to incur nonreimbursable expenses in order to receive their full salary and the Company did reimburse all of what the witnesses called "normal" entertainment expenses by its officers. So the so-called policy is confined to certain expenditures which the witnesses termed "extracurricular." The only attempt to relate the nonreimbursable expenses with the income of the officers was what is called the bonus plan. But here the evidence wholly fails to show that the payment of such expenses resulted in any increase in bonus. The evidence with respect to the determination of the amount of each bonus was extremely vague. It seems the Company took 25 per cent of the profits before taxes and that constituted a bonus fund. There was a committee *178 that determined the portion of the fund that was to be paid to any employee as a bonus. All we can learn from this record is that the committee made its determination solely on the basis of business produced by each individual. The argument of the petitioner is that there was the incentive to engage in the so-called extracurricular entertainment in order to secure more business and thereby a larger bonus and that the key employees did just that. In the first place, the line between reimbursable entertainment expenses to produce business and the nonreimbursable entertainment expenses to produce business is unclear. The bonus amount was keyed to the production of business. Whether the expenses here were of the extracurricular variety we do not know. Petitioner here, in most instances, merely allocated a certain portion of each expense item to himself and had the Company, or other corporations of which he was an officer, pay the balance. Part of the amount he allocates to himself he termed nonreimbursable. No evidence was presented that any of the other several corporations in which petitioner was interested had any such policy. Petitioner was an officer of several corporations and many *179 of the listed expenditures were admitted to have been made for the benefit of corporations other than the Company. Petitioner testified that he would take a total expense item and allocate it in some fashion among the several corporations and himself. Some of the expenses would be allocated to each corporation, some would be allocated to himself personally and some would be allocated to himself in his capacity as an officer of the corporations, which amounts he considered nonreimbursable business expenses. In other words, many of the so-called nonreimbursable business expenses were expenses of corporations, from which, as far as we know, petitioner received no income and which had no policy of requiring anyone to assume expenses on their behalf. Even if we assume that the Company had a policy that required or expected employees to bear entertainment expenses, we hold petitioner failed to carry his burden of showing the expenditures in question came within that policy. It is contended that the largest expenditures made in the years before us, which was a Company Christmas party and listed in our findings of fact as "Hotel Chamberlin," come within the established policy of the Company. *180 This is obviously not the case, for the only policy described did not embrace employee entertainment expense. The petitioner testified that for many years the policy of the Company was to have a Christmas party at its own expense for its employees. He further testified that after he became president in 1951, he, personally, decided that it would be better if he gave the parties. He testified that, "I felt that the Christmas party would sort of help to maybe humanize me with the people there in the general office. You might say maybe I was trying to sell myself to the people in the general office." [Italics added]. It is obvious from this and other testimony that the decision that the petitioner would personally pay for the Christmas parties for employees of the Company was his own and was not because of any policy of the Company. Petitioner's voluntary expenditures for the entertainment of the Company's employees may have accomplished the desired result but would not be an expenditure connected with any trade or business of the petitioner. See Harry Kahn, 26 T.C. 273. According to petitioner's witnesses the alleged policy of the Company related only to entertainment *181 expenses of a nonroutine nature, looking to securing new business for the Company. Yet in the list of expenditures furnished by petitioner and labeled "Expenses paid for business purposes nonreimbursed" and found in our findings of fact, we find items completely unrelated to or very remote from, the entertaining of such people. Such things as office supplies, hotel expenses for the wife of an employee, flowers for wives of directors of the corporations in which petitioner had an interest, and an item of $67.35 for uniforms "for the colored boy that works in our house, * * *." Many other items were just as remote to any policy of the Company, or to the realization of petitioner's income, and must be treated accordingly. In general, the record as to the purposes for which all of the expenditures were made is very unsatisfactory. Typical of the vague testimony is petitioner's explanation of an expenditure in 1953, amounting to $1,383.08, which was headed, "Total of varied detailed expenses * * *." Petitioner testified, "Well, $833 of it are detailed items which were spent by me during the year in connection with my being President Noland, Chairman of the Board of Virginia Engineering, *182 et cetera, and $500 of it is an estimate by me of similar expenses which I had incurred but for which I have not otherwise accounted." The $500 item was later described by petitioner as having been to a large extent for entertaining at home. This expenditure was one of the larger items expended in 1953 and the quoted testimony is typical of the petitioner's efforts to prove that such items were directly connected with or pertained to the trade or business of the Company or his own trade or business of being a corporate officer. Certainly any sums paid on behalf of other corporations can not qualify as petitioner's expenses but must be deducted, if at all, by the individual corporations which incurred the expense. See Jacob M. Kaplan, 21 T.C. 134. Since we have no evidence by which we can determine the extent to which sums were expended solely for the benefit of the Company, even though we assume the Company had some sort of a nonreimbursement policy, we must sustain the respondent's determination as to those deductions claimed as nonreimbursed business expenses. The record is not clear as to expenditures which were allegedly made, not for the benefit of any corporation, *183 but for the benefit of the petitioner in his own trade or business of being a corporate executive. Most of the items consist of dues to clubs and subscriptions to certain reading matter. The respondent allowed certain of the subscriptions to business periodicals as deductions but disallowed the balance as personal expenses not incurred in connection with the performance of petitioner's duties. We do not think that petitioner has shown that such deductions, disallowed by the respondent, were necessary to his business. Petitioner testified that for the most part the clubs were joined upon solicitation and that he did not attend any of their meetings or use them in any way. The mere statement that he would not have joined such clubs but for his "business connection" is not sufficient proof that such club dues were ordinary and necessary to the realization of his own income. For the most part it is obvious that petitioner's reasons for joining such clubs or organizations were because petitioner was a generous, civic minded individual. We are sure that such was the case of the largest single item under "Dues and Subscriptions" in 1953. We refer to the $1,500 deduction of a contribution *184 to the Peninsula Industrial Committee, an organization formed to encourage new industry to the Newport News area. Petitioner was chairman of the fund raising committee of the organization. The Company, and at least one other corporation in which petitioner was interested, made separate contributions to the fund. The reasons given by petitioner for considering the contribution a business expense was that "anything that helps the community helps the business of which I am a part and I think anything that helps the business of which I am a part helps me." We do not think that an expense so remote or far removed from the realization of petitioner's income or business is directly connected with or pertains to the taxpayer's trade or business. Or, another way of putting it, we do not think that the expense proximately or immediately relates to his own business. See Jacob M. Kaplan, supra.For this reason it must be disallowed. It would serve no useful purpose for us to itemize each and every deduction claimed by petitioner and point out our reasons for sustaining the respondent on each of them. The examples which we have pointed out serve to demonstrate the petitioner's *185 failure of proving that any of such expenses were ordinary and necessary business expenses of the petitioner. Decisions will be entered under Rule 50. Footnotes
*. Note: This case was heard by Judge Stephen E. Rice and briefs were thereafter duly filed. Upon the death of Judge Rice on February 9, 1958, this case was reassigned to Judge John E. Mulroney and notice was given to the parties that motions connected with the proceedings could be addressed to Judge Mulroney for a period of 30 days before final disposition of the case. No such requests have been received.↩
1. All references hereinafter to section numbers are to the Internal Revenue Code of 1939.↩